## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY MARTIN,

                    Plaintiff,

          v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, *et al*.,

                    Defendants.

Civil Action No. 19-20969 (JXN)(SDA)

## <u>OPINION</u>

<u>**NEALS**</u>, District Judge

      Before the Court are Defendants Corrections Officer Grundy ("Grundy") and Sergeant Starks' ("Starks") (collectively "Department of Corrections ("DOC") Defendants") motion for summary judgment (ECF No. 79) and Defendants Steven D. Wheeler, R.N. ("Wheeler") and Denise Johnson's, N.P. ("Johnson") (collectively "Medical Defendants") motion for summary judgment (ECF No. 80). Plaintiff filed an opposition to Defendants' motions for summary judgment (ECF No. 82), to which Defendants Grundy and Starks replied (ECF No. 84) and Defendants Wheeler and Johnson replied (ECF No. 83). Having considered the parties' submissions in support of and opposition to the pending motions, the Court decides the motions without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motions for summary judgment (ECF Nos. 79, 80) are **GRANTED**.

## I.     BACKGROUND AND PROCEDURAL HISTORY[1]

During the relevant time, Plaintiff was a state prisoner incarcerated at Northern State Prison ("NSP"). (DOC Defendants' Statement of Undisputed Material Facts ("DOC DSOMF") ¶ 1, ECF No. 79-2.)[2] This matter arises from the medical care Plaintiff received at NSP. (Medical Defendants' Statement of Undisputed Material Facts ("Medical DSOMF") ¶ 2, ECF No. 80-2 at 20-23.)

In 2016, while incarcerated at NSP, Plaintiff was diagnosed with deep vein thrombosis ("DVT"), a blood clotting condition, of the lower extremity. (DOC DSOMF ¶ 3; Medical DSOMF ¶ 4.) On or about March 13, 2018, Plaintiff was fitted with an "IVC" filter to treat his DVT. (Medical DSOMF ¶ 4.) NSP medical providers saw Plaintiff every thirty to ninety days for chronic care appointments. (Medical DSOMF ¶ 5.) The chronic care appointments included a physical examination, vital signs, and a discussion of Plaintiff's medical condition. (*Id.* ¶ 6.)

On May 3, 2018, Plaintiff went for a regularly scheduled chronic care appointment. (*Id.* ¶ 7.) Prior to seeing Defendant Johnson, Plaintiff's vital signs were taken by a different nurse. (*Id.* ¶ 9.) Plaintiff then told Defendant Johnson that he was experiencing lumps in his arm, dizziness, and a "little pain." (*Id.* ¶ 8.) Plaintiff walked himself to the medical visit and was able to communicate with Defendant Johnson without difficulty. (*Id.*) At the appointment, Defendant Johnson informed

---

[1] In opposing Defendants' motions for summary judgment, Plaintiff failed to include a responsive statement of material facts to Defendants' statements of undisputed material facts as required by Local Civil Rule 56.1 (*See generally* ECF No. 82.) On January 17, 2025, the Court provided Plaintiff with thirty days to file the required responsive statement of material facts, addressing each paragraph of Defendants' statements of undisputed material facts. (*See* ECF No. 91.) Plaintiff failed to comply with the Court's Order. Instead, on February 20, 2025, Plaintiff filed his own statement of undisputed material facts. (*See* ECF No. 92.) As such, Defendants' statements of undisputed material facts (ECF No. 79-2, 80-2 at 20-23) are unopposed. However, the Court considers Plaintiff's statement of material facts (ECF No. 92) to the extent that they contradict Defendants' statements and to the extent that they are supported with citations to affidavits and other documents submitted in connection with the motions. Local Civ. R. 56.1.

[2] For the sake of brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein. The Court sets forth only those material facts necessary to decide the motions. All facts are undisputed unless otherwise noted.

Plaintiff that the Electronic Medical Record ("EMR") system was not working. (*Id.* ¶ 10.) The medical note from the visit indicates that the EMR was not available, and that Plaintiff would be rescheduled to discuss lab results. (*Id.*, citing ECF No. 80-4 at 7.) However, Plaintiff's treatment plan was discussed, and his follow-up three-month appointment was scheduled. (*Id.*)

On the morning of May 22, 2018, Plaintiff experienced pain in his lower abdomen, swelling in his legs, and vomiting all night. (*Id.* ¶ 13.) Defendant Grundy arrived to perform the inmate count, and Plaintiff asked his cellmate to inform Defendant Grundy that he needed medical attention. (DOC DSOMF ¶ 6.) At that time, Plaintiff's cellmate informed Defendant Grundy only that Plaintiff needed medical attention. (*Id.* ¶ 7.) Plaintiff did not inform Defendant Grundy of what symptoms he was experiencing. (*Id.* ¶ 8.) Defendant Grundy proceeded to complete the inmate count. (*Id.* ¶ 9.) Plaintiff submits that when Defendant Grundy was finished with the inmate count, Plaintiff's cellmate again told Defendant Grundy that Plaintiff needed medical attention. (Plaintiff's Statement of Material Facts ("PSOMF") ¶ 7.) Plaintiff claims that Defendant Grundy said, "I will not call the code; the count isn't clear and your buddy isn't dead yet." (*Id.* ¶ 8.)

Following the inmate count, Defendant Starks returned to Plaintiff's cell. (*Id.* ¶ 9.) Defendant Starks called a "Code 53 medical emergency." (*Id.* ¶ 11.) Defendant Wheeler, together with other medical providers, responded to Plaintiff's cell. (Medical DSOMF ¶ 14.) Defendant Starks instructed two other inmates to assist Plaintiff in walking from his cell to the medical floor. (DOC DSOMF ¶ 12.) While walking, Plaintiff collapsed. (*Id.* ¶ 13.)

CPR was performed by a medical provider, Nurse Villegas. (Medical DSOMF ¶ 15.) Plaintiff's breathing was restored and he regained consciousness. (*Id.*; DOC DSOMF ¶ 14.) He was taken down the stairs on a longboard, placed on a stretcher, and transported via ambulance to

University Hospital, where he was treated for blood clots in his heart and lungs. (*Id.*) Plaintiff remained in the hospital for three days and was then discharged to NSP. (DOC DSOMF ¶ 15.)

On December 11, 2018, Plaintiff went to the medical unit due to swelling in his hand. (Medical DSOMF ¶ 11.) Defendant Johnson informed Plaintiff that he needed to complete a medical slip. (*Id.* ¶ 12.) Plaintiff completed a medical slip and was seen by medical "on or about that same day by a different provider." (*Id.*)

On December 2, 2019, Plaintiff filed his initial complaint in this matter. (ECF No. 1.) The matter was originally assigned to the Honorable John Michael Vazquez, United States District Judge (ret) ("Judge Vazquez").[3] On January 15, 2021, Plaintiff filed his Amended Complaint. (ECF No. 13.) On March 9, 2021, Judge Vazquez filed an Opinion and Order, screening the Amended Complaint pursuant to 28 U.S.C. § 1915A. (*See* ECF No. 14.) Judge Vazquez dismissed Plaintiff's supervisory liability claims against Marcus Hicks, the New Jersey Department of Corrections Commissioner ("NJDOC"), and George O. Robinson, Jr., the Warden of NSP.[4] (*Id.* at 3-5.) Judge Vazquez also dismissed with prejudice Plaintiff's claims against the State of New Jersey, NJDOC, and the individual defendants in their official capacity. (*Id.* at 2-3.) Judge Vazquez proceeded Plaintiff's § 1983 failure to provide adequate medical care claims against DOC Defendants and Medical Defendants in their individual capacities. (*Id.* at 1-2.)

Defendants filed their motions for summary judgment, seeking summary judgment on Plaintiff's Eighth Amendment deliberate indifference to Plaintiff's medical needs claims. (*See generally* ECF Nos. 79, 80.) Medical Defendants also seek summary judgment on Plaintiff's Fourteenth Amendment denial of medical care claims and any additional causes of action. (ECF

---

[3] This matter was reassigned to the undersigned for all further proceedings on June 30, 2021. (ECF No. 27.)

[4] Despite Judge Vazquez's dismissal of these claims, defendants Marcus Hicks and George O' Robinson have not been terminated on the docket. The Court will instruct the Clerk of Court to terminate these defendants.

No. 80-2 at 17-19.) Plaintiff filed an opposition to both motions (ECF No. 82), Defendants filed replies (ECF Nos. 83, 84).

On January 17, 2025, the Court filed a Memorandum and Order, finding that Plaintiff failed to include a responsive statement of material facts as required under Local Civil Rule 56.1. (ECF No. 91.) The Court provided Plaintiff with thirty days to file a responsive statement of material facts. (*See id.*) On February 20, 2025, Plaintiff filed a statement of undisputed material facts, again failing to file a responsive statement of material facts. (ECF No. 92.) Defendants filed responsive statements to Plaintiff's statement of undisputed material facts. (ECF Nos. 93-1, 95.) The motions are now ripe for resolution.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. Nor will the Court "resolve factual disputes or make credibility determinations." *Rhodes v. Marix Servicing, LLC*,

302 F. Supp. 3d 656, 661 (D.N.J. 2018) (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)). Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

## III.    **DISCUSSION**

Defendants move for summary judgment on Plaintiff's Eighth Amendment deliberate indifference claims, arguing that Plaintiff has failed to establish that Defendants were deliberately indifferent to his medical needs. (ECF Nos. 79-1 at 18-23; 80-2 at 13-17.) Defendants also move for summary judgment on Plaintiff's Fourteenth Amendment denial of medical care claim, as the Fourteenth Amendment does not apply to convicted and sentenced state prisoners. (ECF Nos. 80-2 at 17-18; 81.) Finally, Medical Defendants argue that Plaintiff's additional causes of action must be dismissed as they are not valid causes of action. (ECF No. 80-2 at 17-18.) The Court addresses each argument in turn.

### A.  **Eighth Amendment Deliberate Indifference**

First, Defendants argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims because Plaintiff cannot point to evidence that Defendants were deliberately indifferent to his serious medical needs. (ECF Nos. 79-1 at 18-23; 80-2 at 13-17.)

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishment" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."

*White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

### 1. Defendant Grundy

Defendant Grundy argues that Plaintiff has failed to produce evidence that Grundy knew of Plaintiff's medical history and the severity of Plaintiff's condition on May 22, 2018. (ECF No. 79-1 at 18-23.) Plaintiff opposes summary judgment arguing Defendant Grundy refused to call for medical assistance for Plaintiff in a timely manner. (ECF No. 82 at 8-9.)

Plaintiff testified that through the night of May 22, 2018, he was "feeling a little pain," could not eat, and was having trouble sleeping. (Pl. Dep. at 37:7-11, ECF No. 79-4.) Plaintiff testified that when Defendant Grundy came to take count, Plaintiff had his cellmate tell Grundy that Plaintiff "needed medical attention." (Pl. Dep. at 37:12-15, *id.*) Defendant Grundy stated that he was "taking count." (Pl. Dep. at 37:15-17, *id.)* Plaintiff testified that following count, Plaintiff was in his cell in pain and was "over the toilet vomiting." (Pl. Dep. at 37:18-22, *id.*) Defendant Grundy then informed Plaintiff's cellmate "count not clear yet. And your bunkee not dead yet." (Pl. Dep. at 37:23 to 38:2, *id.*) Plaintiff testified that Defendant Grundy did not call for medical until about 45 minutes later, when count had cleared. (Pl. Dep. at 38:2-8, *id.*) When asked what Plaintiff's cellmate told Grundy was wrong with Plaintiff, Plaintiff testified that he only informed

Grundy "my bunkee need medical attention." (Pl. Dep. at 65:9-13.) Plaintiff provided the Court with an unsworn letter from Plaintiff's cellmate. (*See* ECF No. 82-1.) The letter indicates that Defendant Grundy started count around 6 a.m. and when he reached Plaintiff's cell, the cellmate stated that they needed medical attention right now. (*Id.* at 2.) Plaintiff's cellmate alleges that Defendant Grundy stated that he would not call medical during count. (*Id.*) Approximately 20 minutes later, the cellmate again told Defendant Grundy that he needed to "call the code." (*Id.*) According to the cellmate, he told Defendant Grundy one last time that he needed to call a code, and Plaintiff could not feel half of his body. (*Id.* at 1.) Defendant Starks then appeared at Plaintiff's cell. (*Id.*)

Plaintiff fails to provide evidence that Defendant Grundy was aware of an excessive risk to Plaintiff's health. There is no evidence in the record that Defendant Grundy was aware of Plaintiff's previous health issues. Additionally, Plaintiff's deposition testimony indicates that Plaintiff's cellmate told Defendant Grundy only that Plaintiff needed medical attention. There is no evidence that Defendant Grundy was informed of Plaintiff's symptoms until the last time his cellmate requested medical attention for Plaintiff. Even if the Court assumes arguendo that Defendant Grundy saw that Plaintiff was vomiting, vomiting does not in and of itself rise to the level of a "serious medical need," which would show Defendant Grundy was deliberately indifferent to an excessive risk to Plaintiff's health. *See Maier v. Lehman*, No. 13-6669, 2014 WL 7182116 at *8 (E.D. Pa. Dec. 16, 2014) (citing *Scales v. Bristol Va. City Jail*, No. 7:06–0556, 2007 WL 777532, at *5 (W.D. Va. March 13, 2007) (holding that "allegations of digestive upset, nausea, diarrhea, and vomiting are not sufficiently serious medical needs to rise to the level of an Eighth Amendment violation")); *Ross v. McGinnis*, No. 94–A–6742, 2004 WL 1125177, at *10 (W.D.N.Y. March 29, 2004) (finding that an inmate's complaints of abdominal pain, vomiting, constipation,

and body heat did not constitute a serious medical need). The Court recognizes that Plaintiff's medical issues were more serious than vomiting; however, there is no evidence of record that Defendant Grundy was aware of that fact.

To be liable, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 836–37. Plaintiff has failed to present a material issue of fact that Defendant Grundy, as a lay person, was subjectively aware that Plaintiff required immediate medical attention and was deliberately indifferent to the risk of harm to Plaintiff. *See id.* Accordingly, Defendant Grundy is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### 2. *Defendant Starks*

Defendant Starks argues entitlement to summary judgment because Plaintiff has failed to establish that Defendant Starks' actions constitute a deliberate indifference to harm. (ECF No. 79-1 at 21-22.) Plaintiff in opposition argues that Defendant Starks' decision to have two inmates assist Plaintiff in walking to the stretcher on the floor below amounted to deliberate indifference. (ECF No. 82 at 9.)

Defendant Starks' participation in the May 22, 2018 incident was limited. Plaintiff testified that when the medical emergency code was called, Defendant Starks came to his cell. (Pl. Dep. at 38:7-8, ECF No. 79-4.) Defendant Starks asked if Plaintiff was able to walk and when Plaintiff responded that he could not, Defendant Starks employed the assistance of two fellow inmates to assist Plaintiff in walking to the stretcher on the tier below. (*Id.* at 38:8-15.) Plaintiff testified that the inmates were on both sides of him and were "basically . . . carrying [him]." (*Id.* at 66:1-5.) The inmates assisted Plaintiff in taking approximately 25 steps until he collapsed. (*Id.* at 38:14-17.)

10

The evidence before the Court shows that Defendant Starks responded to Plaintiff's medical incident. After being informed that Plaintiff could not walk on his own, Defendant Starks employed assistance in moving Petitioner to the stretcher located on the tier below. Plaintiff's claim against Defendant Starks does not rise to the level of deliberate indifference. Plaintiff's own testimony indicates that Defendant Starks was attempting to move Plaintiff to a place where he could receive medical care. As the evidentiary record does not support a claim of deliberate indifference by Defendant Starks, his motion for summary judgment as to Plaintiff's Eighth Amendment claim is granted.

### 3. Defendant Johnson

Defendant Johnson moves for summary judgment on the grounds that Plaintiff cannot show the required deliberate indifference. (ECF No. 80-2 at 13-14.) Defendant Johnson argues that although the EMR was unavailable on May 3, 2018, Defendant Johnson saw Plaintiff for a chronic care appointment, assessed his physical condition and discussed his treatment plan. (*Id.* at 13, citing Medical DSOMF ¶ 10.) As to December 11, 2018, Defendant Johnson informed Plaintiff that Plaintiff needed to complete a medical slip, and Plaintiff was then seen by another medical provider on the same or next day. (*Id.*, citing Medical DSOMF ¶ 12.) Defendant Johnson argues that there is no evidence to suggest that she acted with deliberate indifference towards Plaintiff's medical care.

Plaintiff opposes summary judgment arguing that on May 3, 2018, Defendant Johnson told Plaintiff that the EMR system was down, and that he would be called back to the medical department when Johnson could retrieve Plaintiff's medical records, but Plaintiff was never called back to medical. (ECF No. 82 at 13-14.) Plaintiff also argues that on December 11, 2018, Defendant Johnson refused to see Plaintiff and told him to fill out a medical slip. (*Id.* at 14.)

11

As set out above, following Plaintiff's diagnosis of DVT, NSP medical providers saw Plaintiff every thirty to ninety days for chronic care appointments, where providers did a physical examination, took vital signs, and discussed Plaintiff's medical condition. (Medical DSOMF ¶¶ 5, 6.) Plaintiff testified that at his chronic care appointments, a medical provider would perform a physical exam, check his blood pressure and pulse, check him for rashes and swelling, and discuss anything that was bothering Plaintiff. (Pl. Dep. at 30:11 to 31:13, ECF No. 80-3.) Plaintiff testified that on May 3, 2018, he walked himself to his regularly scheduled chronic care appointment. (Pl. Dep. at 28:16-19, 33:21 to 34:2, *id.*) Although Plaintiff testified that Defendant Johnson informed him that the EMR was not working and his records could not be retrieved, Plaintiff also testified that a nurse took Plaintiff's vital signs, before he saw Defendant Johnson. (Pl. Dep. at 31:19 to 32:1, *id.*) Plaintiff admitted that he had the chance to tell Defendant Johnson that he was experiencing lumps in his arm, dizziness, and a "little pain." (Pl. Dep. at 32:17-23, *id.*) Plaintiff testified that at the time he saw Defendant Johnson on May 3, 2018, he was not having trouble walking, standing, breathing or speaking. (Pl. Dep. at 33:16 to 34:20; *id.*) Finally, Plaintiff testified that on that date he had no physical rashes on his skin and that his leg "always experienced a little swelling." (Pl. Dep. at 35:1-6; *id.*) The medical note from this visit indicates that the EMR was not available, and that Plaintiff would be rescheduled to discuss lab results. (ECF No. 80-4 at 7.) However, Plaintiff's treatment plan was discussed and his follow up three-month appointment was scheduled. (*Id.*)

Regarding December 11, 2018, although Plaintiff alleges that Defendant Johnson told him that he had to complete a medical slip for treatment, Plaintiff admitted in deposition testimony that once he completed a medical slip, he was seen that same day by another medical provider. (Pl. Dep. at 58:22 to 59:23, ECF No. 80-3.)

The facts regarding Plaintiff's treatment on May 3, 2018, and December 11, 2018, as to which the evidence creates no genuine material issue, undermine Plaintiff's deliberate indifference claim against Defendant Johnson. Assuming arguendo, Plaintiff could show a serious medical need, the record does not show Defendant Johnson's deliberate indifference to that need. The undisputed evidence of record shows that Plaintiff received consistent medical attention for his DVT condition. Although Defendant Johnson could not view Plaintiff's medical records on May 3, 2018, Plaintiff's vital signs were taken, and Defendant Johnson discussed Plaintiff's symptoms and treatment plan with him. Additionally, on December 11, 2018, Plaintiff was seen by a different medical provider after Defendant Johnson instructed him to complete a medical slip.

In sum, the evidence shows that Plaintiff received medical care on the days in question. Plaintiff has failed to present evidence to show the existence of a genuine issue of material fact regarding whether Defendant Johnson was deliberately indifferent to Plaintiff's serious medical needs. *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners.") Therefore, the Court grants Defendant Johnson's motion for summary judgment as to Plaintiff's Eighth Amendment claim.

### 4. *Defendant Wheeler*

Defendant Wheeler moves for summary judgment on Plaintiff's Eighth Amendment claim. (ECF No. 80-2 at 15-17.) Defendant Wheeler notes that Plaintiff does not argue that Defendant Wheeler failed to treat Plaintiff; rather, he argues Wheeler "manufactured a false report. . . insinuating . . . medical staff immediately came to Plaintiff's cell and assisted [him] to the

stretcher." (*Id.* at 15, quoting ECF No. 13 at 6.) Defendant Wheeler argues that there is no evidence that Wheeler ignored, refused, or prevented Plaintiff's treatment. (*Id.* at 17.)

During the May 22, 2018 incident, Defendant Starks called a "Code 53 medical emergency." (DOC DSOMF ¶ 11.) Defendant Wheeler, together with other medical providers, responded to Plaintiff's cell. (Medical DSOMF ¶ 14.) While Plaintiff was walking with the assistance of two fellow inmates to the medical floor, Plaintiff collapsed. (DOC DSOMF ¶ 13.) CPR was performed by a medical provider, Nurse Villegas, and Plaintiff's breathing was restored. (Medical DSOMF ¶ 15.) Plaintiff was taken down the stairs on a longboard, placed on a stretcher, and transported via ambulance to University Hospital where he received treatment for blood clots in his heart and lungs. (*Id.*; DOC DSOMF ¶ 14.)

Following the May 22, 2018 incident, Defendant Wheeler completed the following narrative of the event:

> Code 53 called on b100. On arrival patient seated on bed. States vomited several times overnight. States has lower abdominal pain and swelling both ankles. Assisted to stretcher. On the way slumped to the floor. Did not fall. Placed in recovery position not breathing. CPR started. Called for assistance from medical and 911. Breathing returned after about 1 min. Patient now responsive, talking. Downstairs on long board to stretcher. To LCP H and 911 crew. Patient awake and answering questions on departure.

(ECF No. 80-4 at 3.)

Plaintiff's opposition to summary judgment alleges only that Defendant Wheeler falsely reported that medical staff immediately came to Plaintiff's cell and assisted Plaintiff to the stretcher, when in fact the stretcher was not brought to the scene and Plaintiff walked 25 feet before collapsing. (ECF No. 82.) However, Plaintiff's own deposition testimony supports Defendant Wheeler's narrative that Plaintiff was "assisted to [a] stretcher" and slumped on the way. Plaintiff testified that he walked out of his cell on the second floor, with the assistance of "two inmates on

each side of [him] trying to walk [him] down the tier," but he collapsed before making it to the stretcher on the first floor. (Pl. Dep. 39:18 to 41:16, ECF No. 80-3.) Although Plaintiff was carried to the stretcher following the loss of consciousness, Plaintiff was being assisted by two fellow inmates prior to slumping to the floor. Plaintiff has failed to provide evidence to create a material issue of fact regarding the truthfulness of Defendant Wheeler's narrative.

More importantly, Plaintiff has failed to produce any evidence or argument that Defendant Wheeler denied or delayed Plaintiff's access to medical care. *Stones v. McDonald*, 573 F. App'x 236, 237 (3d Cir. 2014) (per curiam) (quoting *Estelle*, 429 U.S. at 104-05) ("Deliberate indifference can be shown by a prison official 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'") There is no evidence of record that Defendant Wheeler acted with deliberate indifference and disregarded an excessive risk to Plaintiff's health. *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021). Accordingly, the evidentiary record does not support a claim of deliberate indifference by Defendant Wheeler and the Court grants summary judgment as to this claim.

### B. Fourteenth Amendment Deliberate Indifference

Defendants move for summary judgment on Plaintiff's Fourteenth Amendment deliberate indifference claim. (ECF No. 80-2 at 17-18; ECF No. 81.) Plaintiff has not opposed this argument.

Claims by pretrial detainees for failure to provide adequate medical care arise under the Fourteenth Amendment Due Process Clause. *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). As Plaintiff is a state prisoner, and not a pretrial detainee, his claims arise under the Eighth Amendment. Therefore, Defendants' motions for summary judgment are granted as to Plaintiff's Fourteenth Amendment claim.

### C. Additional Causes of Action

Medical Defendants move for summary judgment on Plaintiff's additional causes of action. (ECF No. 80-2 at 18-19.) Plaintiff similarly fails to oppose this argument.

In his Amended Complaint, Plaintiff indicates that he alleges the torts of:

1. Abuse. 2. Acted as an Accessory. 3. Acted as an Accomplice. 4. Acted as an Advocate for the State, while depriving Plaintiff of his rights. 5. Collusions. 6. Connivances. 7. Concealments Illegally. 8. Conspiracy. 9. Deceits. 10. Defaults. 11. Discriminations. 12. Duress. 13. Deprived and deceived Plaintiff of due process rights. 14. Deprived Plaintiff of equal protection of law and rights by frauds. 15. Frauds. 16. False Representations. 17. False Pretenses. 18. Infractions unlawfully. 19. Infringements of Plaintiff's rights. 20. Illegal intent. 21. Malfeasances. 22. Malice. 23. Misfeasance's. 24. Misrepresentations. 25. Unlawful Motives. 26. Nonfeasance's. 27. Turpitudes. []

(ECF No. 13 at 2.) As the Amended Complaint does not elaborate on any of these claims, it is unclear what claims Plaintiff brings against moving Defendants. However, any remaining claims under New Jersey state law will be dismissed.

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court dismisses all claims over which it has original jurisdiction, the court "may decline to exercise supplemental jurisdiction" over any pendent state law claims. The Third Circuit has long held that where all federal claims are "dismissed before trial, the district court must decline to decide the pendent state claims" absent sufficient affirmative justification for doing otherwise. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). As the Court will enter judgment in favor of all Defendants on Plaintiff's federal claims, the Court therefore declines to exercise supplemental jurisdiction over any remaining state law claims.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, DOC Defendants' motion for summary judgment (ECF No. 79) and Medical Defendants' motion for summary judgment (ECF No. 80) are **GRANTED**. Plaintiff's Section 1983 Eighth Amendment claims against Defendants in their individual capacity

are **DISMISSED** *with prejudice*. Plaintiff's Fourteenth Amendment claims are **DISMISSED** *with prejudice*. Any remaining state law claims are **DISMISSED** *without prejudice* as this Court declines to exercise supplemental jurisdiction over those claims. An appropriate Order accompanies this Opinion.

**DATED**: December 17, 2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge